UNITED STATES, Appellee,

v.

Herbert J. BELL, Specialist Five, U. S. Army, Appellant.

No. 32,275.
CM 431994.

U. S. Court of Military Appeals.

June 18, 1979.

For Appellant: *Captain Anthony J. Siano* (argued); *Major Joe D. Miller* (on brief); *Lieutenant Colonel John R. Thornock, Major Richard J. Goddard, Captain Willard E. Nyman.*

For Appellee: *Captain John F. DePue* (argued); *Colonel Thomas H. Davis, Major John T. Sherwood, Jr.* (on brief); *Captain Keith H. Jung.*

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial of conspiracy to commit murder and of premeditated murder, in violation of Articles 81 and 118, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 918, respectively. He was sentenced to a dishonorable discharge, imprisonment for life, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the con-

finement portion of the sentence to 40 years, but in all other respects he approved the findings and the sentence. The United States Army Court of Military Review affirmed the findings and the sentence in an unpublished opinion.

The appellant's petition to this Court was denied initially, but upon reconsideration, the Court granted review of his contentions that three statements made to the Japanese police during their interrogations of him were involuntary and, hence, inadmissible, and that the rule enunciated in *United States v. Jordan*, 1 M.J. 334 (C.M.A.1976), addressing Fourth Amendment protections, should extend, as well, to those found in the Fifth Amendment and in Article 31.[1] Notwithstanding these claims, we affirm.

I

On February 15 and 16, 1973, the appellant executed two sworn statements to United States military agents investigating the crimes of which the appellant now stands convicted in connection with the death of Private First Class Sidney Wasson on the Island of Okinawa.[2] Because two of the appellant's three alleged co-conspirators were American civilians in Okinawa, the Japanese police agency then was conducting its own investigation into the incident. One of these people, a former soldier named Clarence Wallace, was the focal point of that investigation.[3] To further their independent investigation, the Japanese authorities requested the American military to make the appellant available to them for questioning, which request was granted.[4] On each occasion, the appellant, who was confined by American authorities and remained in American custody throughout, was accompanied to the Japanese police offices by an American serviceman guard/escort who played no role in the interrogations. The three statements here complained of resulted.

■ The trial evidence addressing the circumstances surrounding the Japanese sessions presented sharp conflicts.[5] The trial judge ruled the statements admissible, after hearing the evidence, without specific findings of fact. Similarly, this issue was squarely presented to the Court of Military Review for its consideration, and it, too, resolved the legal issue of voluntariness[6] against the appellant without expressing specific factual conclusions.

■ The general principle is well-accepted in this Court that, in the absence of specific findings of fact, *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976), the Court of Military Review's affirmance of a trial judge's ruling requires that this Court review the evidence in a light most favorable to the party prevailing on the issue below.

1. Uniform Code of Military Justice, 10 U.S.C. § 831.

2. The validity and voluntariness of these two statements are not at issue before this Court.

3. While the appellant was sought by the Japanese as a witness in their investigation against Wallace, the questioning also concerned the appellant as a possible Japanese defendant, for the Japanese had secondary jurisdiction over the appellant and might well have proceeded had the United States waived its primary jurisdiction. *See* Agreement under Article VI of the Treaty of Mutual Cooperation and Security: Facilities and Areas and the Status of United States Armed Forces in Japan, June 3, 1960, 11 U.S.T. 1652, T.I.A.S. No. 4510, Art. XVII 1, 2 and 3.

4. Apparently, the Japanese questioning began immediately after the two statements to the American agents were obtained.

5. Testimony on the issue was given by the Japanese investigators, the appellant, and the noncommissioned officer who escorted the appellant.

6. Notwithstanding the government's suggestion to the contrary, the issue of voluntariness of a statement is one of law. *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1967); *Watts v. Indiana*, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949). Whether a given event or events occurred normally is predetermined in a case reaching this level, but whether that event or those events caused the product statement to have been involuntarily rendered is a proper legal subject for our consideration.

*United States v. Chase*, 1 M.J. 275 (C.M.A. 1976).[7]

▮ Viewing the facts from this perspective, in weighing "the circumstances of pressure against the [appellant's] power of resistance," [8] we answer the question, "whether the defendant's will was overborne at the time he confessed," [9] in the negative. That is, in considering "the totality of the circumstances," [10] we are satisfied by a preponderance of the evidence [11] that all three of the appellant's statements to the Japanese investigators were free and voluntary products of his own will.

## II

▮ The full extent of United States involvement in the Japanese interrogations was to make the appellant available pursuant to the Japanese request and to detail a guard/escort to accompany the appellant to and from the police station as the appellant remained in American custody throughout this period of time. The appellant was questioned exclusively in furtherance of the independent Japanese investigation and the United States requested no assistance of

any kind from the Japanese and suggested no questions to the Japanese which it wished posed to the appellant.

Under these factual circumstances, we conclude, as we did recently in *United States v. Jones*, 6 M.J. 226, 230 (C.M.A.1979) (footnote omitted), "that even assuming for the purpose of this appeal that the *Jordan* standard which involved a Fourth Amendment right also applies to the Fifth Amendment [and Article 31] right[s] not to incriminate oneself, an issue which we do not now decide, there was insufficient American involvement under that standard to invoke the Fifth Amendment [or Article 31]."

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

I agree with the disposition ordered by the majority but write separately to express my view that *United States v. Jordan*, 1 M.J. 334 (C.M.A.1976), is inapplicable as this case was tried before the effective date of the doctrine announced in it.

---

7. *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), teaches that when the prosecution's evidence "is in such hopeless internal conflict that it raises no genuine issue of fact," *id.* at 209, 80 S.Ct. at 281, it need not be considered controlling. *Accord, United States v. Collier*, 1 M.J. 358 (C.M.A.1976). The appellant here does not argue the existence of such hopeless internal conflict, but rather simply urges the incredulity of the testimony of the Japanese investigators. However, as noted, this matter of simple credibility has been resolved authoritatively against the appellant.

8. *Stein v. New York*, 346 U.S. 156, 185, 73 S.Ct. 1077, 1093, 97 L.Ed. 1522 (1953).

9. *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963).

10. *Blackburn v. Alabama, supra*, 361 U.S. at 206, 80 S.Ct. 274.

11. The burden of admissibility of such a statement is upon the Government to show by a preponderance of the evidence that the statement was voluntarily made. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Mewborn*, 17 U.S.C. M.A. 431, 38 C.M.R. 229 (1968).